IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELIA T. WATKINS, | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. JFM-10-1908 |
| SHEILA DAVENPORT, et al., | * | |
| Defendants | | |
| | *** | |

MEMORANDUM

Pending are the parties cross motions for summary judgment.[1] ECF Nos. 28, 33, 35 and 38. The case is ripe for dispositive review. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

A.  Procedural Background

Plaintiff, Elia T. Watkins, a court-committed patient currently housed at the Clifton T. Perkins Hospital Center ("Perkins"), a State psychiatric hospital, filed the instant complaint. Plaintiff, who is self-represented, generally alleged he has suffered discrimination at the hands of the hospital administration and his treatment team and has been misdiagnosed.

He further alleged that on July 14, 2009, he was transferred from the medium security ward to the maximum security ward. Plaintiff stated he should not have been transferred because the maximum security ward is full of violent individuals and he has been attacked over a dozen times. He specified three attacks on October 19, 2009, June 3, 2010, and June 19, 2010, and indicated these attacks occurred while he was housed on the maximum security ward. He further alleged that he was illegally restrained by defendant Nurse Graceland Eno after the first attack. Plaintiff states that

---

[1]Plaintiff's motions for summary judgment (ECF Nos. 33, 35 & 38) are in reality oppositions to defendants' dispositive motion and have been so considered. Accordingly, the motions shall be denied.

he was calm and yet was subjected to four point bed restraints. Lastly, plaintiff claimed he was denied release because he is a messenger of God and it is improper for him to be housed at Perkins. ECF No. 1.

Defendants filed a motion to dismiss, which plaintiff opposed. ECF Nos. 13, 14, 18 & 19. The motion to dismiss was granted in part and denied in part. Plaintiff's claims were dismissed except for the due process claims arising from the alleged failure to safely confine him and the application of four point restraints by Nurse Eno. ECF Nos. 22 & 23. Defendants' additional dispositive motion addressing these claims is now pending.

B.   Factual Background

Perkins, Maryland's maximum security forensic psychiatric hospital, is divided into minimum, medium and maximum security units. The goal of Perkins is to treat patients so that they progress through the units and can be released safely to the community. In determining placement of a patient in a unit, consideration is given to the safety of staff and patients. In order for a patient to be moved from a maximum security unit to a medium security unit the patient must be aware of his mental illness and able to identify significant symptoms identified in his mental health treatment plan. ECF No. 28, Ex. 1.

Pursuant to governing law and accrediting regulations, Perkins policy provides that only a nurse or doctor is permitted to place a patient in seclusion or restraints and may do so only if the nurse or doctor concludes that the patient is an imminent harm to himself or others and a less restrictive intervention would not be effective. Seclusion and restraints may not be used prophylactically, based on a patient's past conduct, or for convenience. *Id.*

When a nurse makes the decision to place a patient in restraints a medical doctor must evaluate the patient within one hour to determine if the restraints are still warranted. A medical doctor may order the patient remain in restrains or seclusion for two hours. During the first hour of seclusion and restraint, a nurse must assess the patient every 15 minutes. After the first hour the nurse can assess the patient every hour. After the first two hours the nurse or doctor must personally assess the patient to determine whether to continue the restrains or seclusion. A medical doctor must personally evaluate the patient at least every eight hours after the first two hours have elapsed. A nurse or a doctor may release a patient from restraints. *Id.*

Where a patient is at risk of violence but the violence is not imminent a physician can order the patient be placed on special observation which can include any of the following: (1) one to one observation—a continuous visual monitoring of a patient by staff at a close distance; (2) constant monitoring—visual observation at a distance greater than contemplated by one to one monitoring; (3) day room observation—the patient remains in the day room or is escorted out of the day room by assigned staff; or (4) ward observation—patient remains in the ward and staff always know the patient's location. The doctor must use the least restrictive observation that would be consistent with the safety of the patient and others. Staff members are trained and use other intervention techniques in order to prevent and manage aggressive behavior. *Id.*

Plaintiff was admitted to Perkins in 1991 after he was found not criminally responsible for a sexual offense involving his minor niece. He is diagnosed as suffering from a schizoaffective disorder, bi-polar type. Plaintiff's illness is described as both a psychotic disorder (manifesting in plaintiff's delusion that he is a prophet) and as a mood disorder (manifesting as manic behavior wherein plaintiff engages in rapid pressured speech, has increased irritability, and becomes verbally

3

aggressive).  *Id.*  Plaintiff has limited insight into his illness.  He believes the victim of his crime provoked him and that he does not have a sexual disorder.  *Id.*, Attachment E.

In July, 2009, plaintiff was moved from medium security to maximum security because he engaged in unwanted sexual contact with a female patient.  Plaintiff attempted to kiss the female patient twice, and succeeded in kissing and hugging her on another occasion without her consent.  He at first refused to admit his actions were unwanted.  He later admitted his actions were unwanted but argued he had been provoked by the female patient.  *Id.*, Attachment F.

On June 8, 2010, plaintiff's treatment team requested the Perkins' Clinical Forensic Review Board ("CFRB") move plaintiff from maximum security to medium security.  The CFRB is a committee that determines whether patients are ready for discharge or should be moved to a different ward.  The CFRB did not agree that medium security would be an appropriate placement for plaintiff due to his limited insight into his illness.  He did not accept that he had acted inappropriately as to his original crime, did not believe he had a sexual disorder, and previously when housed on medium security engaged in inappropriate sexual advances toward a female patient.  *Id.*  Attachment K.

On October 19, 2009, plaintiff engaged in a physical altercation with his roommate, E.F.  The nurse on duty placed plaintiff and E.F. in restraints at approximately 4:15 p.m.  Dr. Coto assessed plaintiff within one hour of the application of restraints and continued the restraints because plaintiff remained angry and refused to acknowledge he fought on the ward.  Plaintiff was visually checked every 15 minutes the entire time he was restrained and fully evaluated each hour.  He was released from restraints at approximately 8:00 p.m., as soon as he was able to contract for safety.  After the incident plaintiff was moved to a different room.  *Id.*, Attachment G.

4

Dr. Ajanah, the medical director of Perkins, avers that in his medical opinion, placing plaintiff in bed restraints on October 19, 2009, was a reasonable exercise of professional judgment and no less restrictive alternatives were appropriate given plaintiff's violent behavior. Dr. Ajanah avers that wrist and ankle restraints would not have been appropriate as plaintiff would have remained mobile with the ability to attack staff or other restraints. *Id*., Ex. 1.

Plaintiff alleges he was assaulted by T.F. on May 21, 2010 and June 3, 2010. ECF No. 1. T.F. was on ward observation from March 13, 2010 through August 10, 2010 due to unpredictable behavior. ECF No. 28, Ex. 1, Attachment H. On ward observation staff were always aware of his location and were able to intervene quickly when necessary.

On May 21, 2010, T.F. was on ward observation when he and plaintiff had a physical altercation. Staff quickly separated the two. Plaintiff claimed injury to his left hand but upon examination no swelling, bleeding, or tenderness was noted. T.F. was placed in restraints. *Id*., Attachment I.

On June 18, 2010, while T.F. was on ward observation, staff noted T.F. seemed to be following plaintiff. Staff approached T.F. and directed him away from plaintiff. On June 19, 2010, while T.F. remained on ward observation, staff noted T.F. aggressively moving plaintiff's papers from a table—tearing them and throwing them in the trash. Staff approached T.F. and re-directed him. T.F. was offered medication by staff which he accepted. *Id*., Attachment J. Plaintiff alleges in his complaint that T.F. injured his eye on June 19, 2010. He reported to the medical clinic on that same date that his eye was injured by an unidentified patient. The notes from the medical clinic indicate, however, that plaintiff was treated for pink eye not injury. *Id*., Attachment J.

5

On July 17, 2010, T.F. was again on ward observation when he was observed crossing paths with plaintiff. Staff immediately intervened. Plaintiff suffered a scratch on his hand as a result of the altercation. *Id.*, Attachment K.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-

24 (1986)).

## Analysis

A.   Supervisory Liability

Section 1983 liability on the part of a supervisor requires a showing that: (1) the supervisory defendant failed promptly to provide an inmate with needed medical care; (2) the supervisory defendant deliberately interfered with the prison doctors' performance; or (3) the supervisory defendant tacitly authorized or was indifferent to the prison physicians' constitutional violations. *See Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).    In his complaint, plaintiff makes no specific allegations against defendants Mohamed Ajanah, Terry Brown, Howard Burton, Sheilah Davenport, Nina Diana, Valerie Grimes, Lawrence Taylor, Dr. Mei-Leong, and Ms. Haywood.[2] Rather, it appears that plaintiff seeks to hold these defendants responsible due solely to their supervisory roles as administrators of the facility. This is the very essence of the doctrine of respondeat superior, which has no place in § 1983 litigation.  Defendants Terry Brown, Howard Burton, Sheilah Davenport, Nina Diana, Valerie Grimes, Lawrence Taylor, Dr. Mei-Leong, and Ms. Haywood, Dr. Mei-Leong, and Ms. Haywood

---

[2]    Terry Brown is the chief of nursing responsible for supervising and managing nurses who head the various units at Perkins. She does not participate in any direct patient care. ECF No. 29, Ex. 2.

Howard Burton is a Social Worker at Perkins on the medium security ward and as such had no involvement with plaintiff's care during the times at issue in this case. *Id*., Ex. 3.

Sheilah Davenport was the Chief Executive Officer of Perkins from September, 2006 to February, 2011. As such, she was responsible for overall operations and direction of Perkins.  She did not engage in direct patient care or day to day operations at Perkins.  *Id*., Ex. 4.

Nina Diana is Director of Social Workers at Perkins.  She is responsible for supervising all social workers in the social work department and manages the individual therapy program at Perkins.  She has not provided any direct care to plaintiff in over ten years.  She further avers that Yung-mei Leong was a psychologist previously employed by Perkins; however, plaintiff was never Dr. Leong's patient. *Id*., Ex. 5.

Valerie Grimes, a Licensed Certified Social Worker, is employed at Perkins as the Assistant to the Clinical Director.  She avers she had no direct involvement in any of the actions complained of by plaintiff. *Id*., Ex. 6.

Lawrence Taylor avers that he was previously employed at Perkins as the captain of security.  He did not have any direction contact with patients at Perkins; rather, he supervised other security personnel. *Id*., Ex. 7.

7

are entitled to summary judgment in their favor.

B.      Due Process

The core question before the court is whether any of the named defendants violated plaintiff's due process rights by unnecessarily placing him in restraints or by transferring him to the maximum security unit. While an involuntarily confined patient in a state mental health facility has a due process right to be free from unreasonable restraint and the right to be housed in safe conditions, such rights are tempered by the treatment concerns of mental health professionals. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Decisions made by treating professionals are presumptively valid, and should not be second-guessed by the court. *Id*. Nonetheless, a due process violation will be found if the treating professionals substantially departed from the exercise of accepted professional judgment. *See Patten v. Nichols*, 274 F.3d 829, 842 (4th Cir. 2001). Neither malpractice nor a difference of opinion among experts as to the proper treatment of a patient, however, will support a finding that due process was violated. *Id*. at 845; *see also Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996).

The uncontroverted evidence presented here does not support plaintiff's claim of due process violations. The decision to place plaintiff in restraints constituted a reasonable exercise of professional judgment and complied with applicable laws and policies regarding the use of restraints. Plaintiff's protestations to the contrary, defendants reasonably believed he demonstrated an imminent threat of harm to himself and/or to others as evidenced by his assaultive conduct. Medical providers believed that the curtailment of plaintiff's mobility was the least restrictive alternative given plaintiff's behavior. The order for restraints was reviewed every hour and plaintiff

was kept in restraints only so long as was necessary. Moreover, staff at Perkins checked plaintiff every fifteen minutes, as required under Maryland law, to determine whether he had good circulation, required fluids or needed to use the rest room. The appropriateness of the restrains was formally assessed hourly. The foregoing restraint of plaintiff's liberty was minimal and reasonable under the circumstances.

Further, the unnamed employees who determined that plaintiff should be moved to the maximum security unit at Perkins acted with reasonable professional judgment given plaintiff's unwanted sexual contact with a female patient and lack of insight into his mental health problems. *Id*., Attachment F. Likewise, nothing about the decision to place plaintiff in a room with E.F. was unreasonable. Perkins staff had no basis for believing that E.F. would engage in aggressive behavior and as soon as the physical altercation occurred the patients were separated and plaintiff was moved to a different room. Clearly the incident involving E.F. and plaintiff was a spontaneous event and the conduct of defendants did not violate plaintiff's rights.

In the same way, the actions relative to T.F. and plaintiff did not depart from the exercise of reasonable professional judgment. Staff at Perkins were not authorized to simply place T.F. in seclusion and/or restraints as a prophylactic measure. ECF No. 28, Ex. 1. Rather staff was aware T.F. might engage in unpredictable violent behavior and as such T.F. was placed on ward observation so that staff could always be aware of his location and able to constantly monitor his behavior. Staff closely watched T.F. and intervened whenever his actions appeared to be becoming aggressive. That they failed on some occasions to avert a physical altercation is insufficient to support a finding that plaintiff's substantive due process rights were violated.[3] *See e. g. Alves v.*

---

[3] For the first time, in his opposition to the pending dispostive motions, plaintiff complains about being housed on

*Murphy,* 530 F. Supp. 2d 381, 389 (D. Mass. 2008) (placing an offender convicted of abusing adolescent males in same room as plaintiff who exhibited adolescent mannerisms did not violate substantive due process).

Nothing in the conduct of defendants suggests that the decision to place or maintain plaintiff in the maximum security unit constituted "such a substantial departure from accepted professional judgment practice or standards so as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323.  Moreover, "[n]egligently inflicted harm [is] categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

## Conclusion

Defendants' motion for summary judgment shall be granted. A separate Order follows.

Date:  __February 10, 2012__                                  ___/s/_____
                                                                                        J. Frederick Motz
                                                                                        United States District Judge

---

the maximum security ward during a scabies outbreak and complains that the defendants' actions in other respects constituted medical malpractice.  While these claims are not properly before the court, plaintiff is advised that claims of medical malpractice are not cognizable in §1983 proceedings.  *See Patten v. Nichols* 274 F.2d 829, 845(4th Cir. 2001) (evidence establishing medical malpractice is insufficient to show a constitutional violation of substantive due process right of involuntarily committed mental patient to medical care).